The Chancellor.
By the charter of the city of Newark, it is declared lawful for the common council of the said city to order and cause sewers or drains to he made and kept in repair, in such part of the city as the common council shall think necessary, and that the whole expense thereof shall be ascertained and fixed by certificate and oath of the street commissioner, to be filed in the office of the city treasurer, which amount, together with such damages as are required to be paid by the act entitled “ A further supplement to the act entitled an act to incorporate the city of Newark, passed February 28th, 1888,” shall be assessed, either in whole or in part, upon the owners of property benefited thereby; and in case a part only of such amount aforesaid shall be assessed upon *453 such, owners of property, then the balance of the whole amount of such expense and damages shall be assessed upon the said city; the aforesaid assessment of the amount of such expense and damages shall be made upon the parties aforesaid by and according to the discretion of five commissioners, to be appointed as in the said act is directed, and the amount so assessed, it is declared by the said charter, shall be and remain a lien upon the property on which such assessment is made until the same is paid. And it is declared lawful for the said common council to enforce the payment of the said expense and damages, in the same manner that is provided in the said charter for the payment of the expenses of sidewalks. In the case of sidewalks, the assessment for the expenses referred to is enforced by a sale of the lots upon which the assessment is made.
By virtue of the power thus conferred upon them, the common council of the city of Newark authorized the construction of a sewer in the city, which, in their proceedings relating thereto, is designated as the south sewer.
On the 1st of December, 1854, the common council passed a resolution appointing five freeholders, as commissioners, to make an assessment of the amount of the expense, as it had been ascertained and fixed by the certificate and oath of the street commissioner, which assessment was to be made according to the provisions of the charter, either in whole or in part upon the owners of' property benefited thereby; and if, by the judgment of said commissioners, a part only of the expenses should be assessed upon such owners of property, then to assess the balance upon the city of Newark.
On the 6th of July, 1855, the common council ratified and confirmed the assessment of the said commissioners, and authorized the treasurer of' the city to demand and receive the same from the individuals who were bound to pay their respective assessments, and if they failed to *454 make suck payment, then to proceed and collect the same according to law.
In pursuing his duties under this resolution, the treasurer advertised the property assessed for sale. Pending such advertisement, a number of individuals whose lots were so advertised, and who were assessed by the commissioners, caused to be issued out of the Supreme Court a writ of certiorari, to test the validity of the proceedings under which the said assessment was made. Such proceedings were had under the said writ that the Supreme Court reversed the orders of the common council, so far as the parties to the certiorari were concerned, but no further; and the judgment of reversal declares that, as to all others assessed not parties to the certiorari, the order and proceedings of the common council were not affected by the judgment of the court.
After the decision of the Supreme Court, the common council, without any notice to the persons assessed, passed a resolution declaring the appointment of the commissioners aforesaid, and all proceedings subsequent thereto, vacated and set aside. They then appointed other commissioners to make another assessment for the same sewer, who, after discharging the duty imposed upon them, made their report, which the common council ratified on the 30th of December, 1856, and ordered the treasurer of the city to collect the assessment so made by the last named commissioners. The last commissioners directed a different amount, for the persons alleged to be benefited thereby to pay, from that ordered by the first set of commissioners.
The complainants, Henry C. Jones and James Courier, are the owners of property in the city of Newark, which was assessed by both sets of commissioners, as benefited by the sewer. The assessment, made upon the complainant’s property by the last set of commissioners, exceeds in amount that made by the first. The complainants allege that the first assessment is binding upon the parties until *455 set aside by some competent tribunal, which it has not been, as far as they are concerned, and that the proceedings of the common council, by which the first assessment was declared vacated and set aside, are illegal; that they have tendered the amount respectively assessed against them by the first assessment, and now are ready to pay the same under the order of this court.
The complainants having refused to pay the assessment last made, the treasurer of the city has advertised their property for sale at public auction. The prayer of the bill is, that the defendants may be restrained from making such sale, or from further advertising the said property for sale for the payment of the assessment made by the last named commissioners, and that the orders of the common council affecting the complainants, so made in respect to the said south sewer in reference to the second assessment, may be declared illegal and of no effect.
I have stated all the facts of the complainants’ bill upon which they invoke the aid of this court in their behalf. The question is at once suggested — what equity is there in the case wdiieh the complainants are entitled to have established and enforced by a decree of this court ? The city of Newark has expended the money for the construction of the sewer. It is not suggested that the construction was imprudently ordered, or that any unnecessary expense has been incurred in the work. The right of the city to construct the sewer, and to have an assessment made upon property beneficially affected by it to pay for the expense incurred, is not denied. That the property belonging to the complainants, which has been assessed, is benefited by the sewer, and is therefore properly subjected to a portion of the burthen for its construction, is not disputed. And what is very material in looking at the equity of this case, the complainants do not even suggest that their property has been assessed too high, or that the assessment is, in any respect, unequal or unjust.
What is their ground of complaint ? They offer to *456 pay the first assessment, but refuse to pay the second. On what ground do they place their refusal ? Not that the second assessment is too high, nor because it is higher than the first assessment. It is true they allege that the second assessment is higher than the first. But they do not- state the difference as to amount between the two assessments. The presumption is that it is so trifling, it was not worth mentioning. At all events, they do not make the difference of assessment any ground of complaint, nor do they ask the interference of the court to protect them against the city’s raising out of their property the amount of the second assessment, on account of that assessment being larger than they are bound to pay. The complainants claim no equity, on the ground, that the assessment they have tendered themselves ready to pay, which they admit it is right they should pay, is less than that -which they insist has been illegally laid upon their property. And yet it is manifest, if the complainants have any equity, it is here; for all the relief they ask this court to give them is to decree that they may be allowed to pay the first assessment, and to have their property relieved from the lien which has attached to it. The complainants place themselves entirely upon their legal rights. They allege that the defendants had no right to make the second assessment, and upon that ground ask that their property may be relieved from its burthen. The granting, or refusing of injunctions, is a matter resting in the sound discretion of a court of equity, and, consequently, no injunction will be granted whenever it will operate oppressively, or inequitably, or contrary to the real justice of the case, or where it is not the fit and appropriate mode of redress under all the circumstances of the case, or where it will or may work an immediate mischief or fatal injury. 2 Story’s Eq. Jur. § 959. As was remarked by Mr. Justice Baldwin, in the case of Bonaparte v. Camden and Amboy Railroad Company (1 Baldwin’s Cir. C. R. 218), it will be refused till the court are satisfied that the *457 case before them is of a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act.
As I have already remarked, the injury which in this case the court is called upon to avert, is to prevent the complainants exacting from the defendants an insignificant pecuniary recompense for a benefit conferred, and simply upon the ground that the defendants have mistaken the remedy which the law has given them to enforce their legal rights. I cannot grant the injunction, unless I declare all the proceedings of the common council in relation to the second assessment illegal and void. The consequences of such an announcement by this court would be most injurious to the rights of the defendants, while it would be of substantial benefit to no one. It appears, by a schedule annexed to the bill of complaint, that there are upwards of five hundred individuals who are in default in not paying the assessments made upon their property to defray the expenses of constructing the sewer in question, and whose property, as well as that of these complainants, is advertised for sale in consequence of such default. This fact plainly shows the very great mischief and embarrassment that would flow from granting this injunction. The magnitude of the injury to the city of Newark that would directly follow bears no proportion to any benefit that would be conferred upon the complainants, or any injury averted as to their rights, by granting them the remedy they solicit. I think the court may judiciously lay down the rule, that an injunction ought not to issue where the benefit secured by it to one party is but of little importance, while it will operate oppressively and to the great annoyance and injury of the other party, unless the wrong complained of is so wanton and unprovoked in its character as properly to deprive the wrongdoer of the benefit of any consideration as to its injurious consequences.
This view which I have taken of the case satisfies me *458 that it would be an unwise exercise of that discretion, which ought to govern the court, to order the injunction. I intimate no opinion as to the legality of the proceedings of the common council. I have given that subject no consideration. I ought to say that I have formed no impression unfavorable to the legality of these proceedings. The common council have acted in good faith, with a proper regard to the interest of the city, and of those upon whom the law imposes the duty of bearing a portion of the burthen of this sewer. The equity of the case is all with the defendants.
The motion for an injunction is denied with costs.